UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                                                  Case No. 3:15-bk-778-PMG

Jeffrey Leonard Jones
Darnella Cole Jones,

_____Debtors.                                        Chapter 7


Aaron R. Cohen, as Trustee
of the estate of Jeffrey Leonard Jones
and Darnella Cole Jones,

                    Plaintiff,

vs.                                                                                     Adv. No. 3:15-ap-240-PMG

Jeffrey Leonard Jones
and Darnella Cole Jones,

_____Defendants.


FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND MEMORANDUM OPINION

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Complaint filed by Aaron R. Cohen, as Chapter 7 Trustee, Objecting to the Discharge of the Debtors, Jeffrey Leonard Jones and Darnella Cole Jones.

Mr. Jones liquidated his pension fund on December 19, 2014, and deposited the sum of $28,151.43 into his checking account. In the two months between the deposit and the filing of his

1

bankruptcy petition on February 25, 2015, Mr. Jones (1) gave $5,000.00 in cash to his wife, (2) gave $4,065.00 in cash to his church, (3) spent $3,870.00 to purchase a vehicle, (4) spent $1,010.00 to pay off a debt to Aaron's Furniture, and (5) spent $3,025.00 to pay his bankruptcy attorney's fees. Mr. Jones did not explain a number of other expenditures, and did not fully disclose the transactions on his bankruptcy schedules.

Based on the circumstances and the course of conduct, the Court finds that Mr. Jones transferred property within one year before his bankruptcy petition with the intent to hinder, delay, or defraud his creditors, that Mr. Jones knowingly made a false oath on his bankruptcy schedules, and that Mr. Jones failed to explain satisfactorily a loss of assets. Consequently, his discharge should be denied pursuant to §727(a)(2)(A), §727(a)(4), and §727(a)(5) of the Bankruptcy Code.

Additionally, the discharge of Mrs. Jones should be denied pursuant to §727(a)(4) of the Bankruptcy Code, because she knowingly made a false oath on the bankruptcy schedules. Specifically, the Statement of Financial Affairs signed by Mrs. Jones did not disclose the liquidation of the pension fund, the income received as a result of the fund's liquidation, or the gifts that she made from the proceeds of the fund, even though Mrs. Jones was aware that the transactions had occurred within two months before the bankruptcy petition was filed.

**Background**

Mr. Jones is retired and suffers from a severe speech disability. He receives the sum of $1,682.90 per month as social security income, and the sum of $651.36 per month as VA assistance, for total income in the amount of $2,229.36 per month.

Mrs. Jones is employed by Sodexo, Inc. as a cashier, and receives net income from her employment in the amount of $1,497.25 per month.

2

The Debtors previously owned a home located in Jacksonville, Florida. The home was sold at a foreclosure sale on December 15, 2014, and the Debtors currently reside in an apartment. (Doc. 17).

On December 19, 2014, four days after the foreclosure sale, Mr. Jones withdrew the entire amount of his pension fund from Fidelity Investment. The gross amount of the withdrawal was $36,439.00. (Debtors' Exhibit 2).

On the same date that the pension fund was liquidated, December 19, 2014, the net proceeds of the fund in the amount of $28,151.43 were deposited into Mr. Jones' individual checking account at Vystar Credit Union. (Trustee's Exhibit 2).

On the following day, December 20, 2014, Mr. Jones made a cash withdrawal from his checking account in the amount of $9,365.00. (Trustee's Exhibit 2). The cash was used as follows:

> 1. Mr. Jones gave the sum of $5,000.00 in cash to his wife, Mrs. Jones, and Mrs. Jones testified that she spent the entire $5,000.00. Specifically, Mrs. Jones spent a substantial portion of the cash on gifts for various family members. (Trustee's Exhibit 5).
>
> 2. On December 21, 2014, Mr. Jones made a cash contribution to his church in the amount of $4,065.00. The amount of the contribution was notably large in relation to Mr. Jones' prior contributions, which had ranged from $4.00 to $125.00 in the six months before December 21, 2014. (Trustee's Exhibit 5).

Within two months after liquidation of the pension fund, Mr. Jones also made the following withdrawals or expenditures from his checking account:

> 1. On January 6, 2015, Mr. Jones made a withdrawal from his checking account in the amount of $3,870.00 to purchase a 2004 Jeep Grand Cherokee. (Trustee's Exhibits 2, 5).
>
> 2. On January 16, 2015, Mr. Jones made a purchase at The Athlete's Foot in the amount of $427.00. (Trustee's Exhibit 2).

    3. On January 27, 2015, Mr. Jones made a cash withdrawal in the amount of $1,010.00. (Trustee's Exhibit 2). At trial, Mr. Jones testified that he used the funds to "pay off" a debt owed to Aaron's Furniture.

    4. On January 29, 2015, the Debtor withdrew the sum of $3,025.00 to pay his bankruptcy attorney's fees. (Trustee's Exhibit 2).

Finally, in the two months after liquidation of the pension fund, Mr. Jones also made the following significant withdrawals from his bank accounts: (1) a withdrawal in the amount of $1,819.00 on December 23, 2014; (2) a withdrawal in the amount of $400.00 on December 29, 2014; (3) two withdrawals totaling $848.00 on December 31, 2014; and (4) a withdrawal in the amount of $450.00 on February 5, 2015. At trial, Mr. Jones testified that he did not know the purpose of these additional withdrawals.

On February 25, 2015, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code. On the petition date, a combined balance in the amount of $4,146.15 remained in Mr. Jones' checking and savings accounts.

On their schedule of assets in the bankruptcy case, the Debtors listed the Vystar Credit Union accounts, household goods and personal effects valued at $620.00, several life insurance policies, Mrs. Jones' 401-K plan valued at $900.00, and three vehicles, including a 2014 Hyundai valued at $20,000.00, and the 2004 Jeep Cherokee valued at $3,500.00. The Hyundai was purchased in June of 2014, and is encumbered by a lien in the amount of $24,900.00.

On their Statement of Financial Affairs (SOFA) filed with the bankruptcy petition, the Debtors disclosed Mrs. Jones' employment income and Mr. Jones' social security and VA income. They also disclosed the Hyundai payments, and the contribution to their church in December of 2014.

4

They did not disclose Mr. Jones' withdrawal of the funds from his pension account or the income received from the liquidation of the fund (SOFA items 2, 11), the payment to Aaron's Furniture (SOFA item 3), or the gifts to various family members of $200.00 or more (SOFA item 7).

## Discussion

On July 17, 2015, the Trustee filed a Complaint Objecting to the Debtors' Discharge. In the Complaint, the Trustee alleges that the Debtors' discharge should be denied pursuant to §727(a)(2)(A), §727(a)(4)(A), and §727(a)(5) of the Bankruptcy Code. The Debtors filed a written Answer to the Complaint (Doc. 8), and a final evidentiary hearing was conducted to consider the parties' claims.

At the final hearing, the evidence showed that Mr. Jones conceived and implemented a plan to dispose of certain property with the intent to hinder, delay, or defraud his creditors, and that Mrs. Jones knowingly failed to disclose the property or its disposition on their bankruptcy schedules.

### A. Section 727(a)(2)(A)

In Count III of the Complaint, the Trustee alleges that the Debtors' discharge should be denied pursuant to §727(a)(2)(A) of the Bankruptcy Code. Under §727(a)(2)(A), "a court shall deny discharge when a debtor transfers property within one year before filing his bankruptcy petition if the transfer is made 'with intent to hinder, delay, or defraud a creditor.'" In re Williamson, 2013 WL 441418, at 3 (Bankr. S.D. Ga.).

#### 1. Transfer of property

The term "transfer" is defined in the Bankruptcy Code as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property." 11 U.S.C. §101(54)(D). The definition should be construed as broadly as possible. United States v. Kapila, 402 B.R. 56, 62 (S.D. Fla. 2008); In re Shingledecker, 242 B.R. 80, 82 (Bankr. S.D. Fla. 1999). Generally,

a "transfer" has occurred under §101(54) and §727(a)(2) if the debtor's property was "removed, hidden, parted with or otherwise diminished." In re Charno, 452 B.R. 299, 303 (Bankr. S.D. Fla. 2011)(quoting In re Gauvreau, 375 B.R. 14, 18-19 (Bankr. D. Me. 2007)).

In this case, Mr. Jones withdrew the entire amount of his pension fund from Fidelity Investment on December 19, 2014, and deposited the net proceeds of the fund in the amount of $28,151.43 into his individual checking account.

The next day, Mr. Jones withdrew cash from the checking account in the amount of $9,365.00. From this amount, Mr. Jones gave the sum of $5,000.00 in cash to his wife, and gave the sum of $4,065.00 in cash to his church.

Within two months of the deposit, Mr. Jones also used the sum of $3,870.00 to purchase a vehicle, used the sum of $1,010.00 to pay Aaron's Furniture, and used the sum of $3,025.00 to pay his bankruptcy attorney's fees.

Finally, Mr. Jones made a number of other significant withdrawals from his bank accounts within two months of the deposit, but was unable to explain the disposition of the withdrawn funds. The unexplained withdrawals total more than $3,517.00.

The approximate sum of $4,146.15 remained in Mr. Jones' accounts on February 25, 2015, the date on which the Debtors filed their petition under Chapter 7 of the Bankruptcy Code.

In other words, Mr. Jones had a bank account containing $28,151.43 on December 19, 2014. In the two months after December 19, 2014, Mr. Jones made a series of transactions which left a balance in the account of $4,146.15 on his bankruptcy petition date. A number of the transactions, such as the gifts and unexplained withdrawals, had the effect of diminishing Mr. Jones' property.

Under these circumstances, the Court finds that Mr. Jones disposed of or parted with funds, and therefore transferred property within the meaning of §101(54) and §727(a)(2) of the Bankruptcy Code.

### 2. Non-exempt funds

The transferred property originated with Mr. Jones' pension fund, and may have been entitled to an exemption from the claims of Mr. Jones' creditors if it had remained in the account at Fidelity Investment. Fla. Stat. §222.21(2).

Under the circumstances of this case, however, the Court finds that the property transferred by Mr. Jones was not an asset that was exempt from the claims of his creditors. Specifically, the funds that originated from the pension account did not retain their exempt status for a number of reasons, including the following:

### a. Voluntary withdrawal

First, Mr. Jones "cashed out" the pension fund two months before the bankruptcy petition was filed. The "cash out" of the account was a voluntary withdrawal by Mr. Jones of the entire amount of the fund. His voluntary liquidation of the account, therefore, is unlike the situations in In re Ladd, 258 B.R. 824 (Bankr. M.D. Fla. 2001) and In re Hickox, 215 B.R. 257 (Bankr. M.D. Fla. 1997). In each of those cases, the debtor's employment was terminated, and the debtors received the proceeds of their pension accounts as mandatory distributions under the terms of the accounts as a result of such termination.

### b. No designated account

Second, the proceeds of Mr. Jones' pension fund were never placed in an individual retirement account or any other investment vehicle. Accordingly, his treatment of the proceeds is unlike the situations in In re Rivera-Cintron, 2015 WL 4749217 (Bankr. M.D. Fla.), and In re Hickox, 215 B.R.

at 257. The debtors in those cases had initially placed the proceeds of their retirement funds in a checking or savings account, and later used the proceeds to open an IRA. The funds remained in the IRA at the time that the debtors filed their bankruptcy cases, and the bankruptcy trustee objected to the exemption claimed for the IRA. The issue was whether the funds had lost their exempt status as a result of their temporary deposit into the interim bank accounts.

In this case, however, Mr. Jones deposited the proceeds of the fund into his general checking account. The checking account was not opened or specially designated to receive the proceeds of the pension fund. Instead, the checking account was an existing bank account that was overdrawn at the time that Mr. Jones deposited the pension proceeds. After the deposit, Mr. Jones continuously drew down and replenished the account to accommodate his transfers, and the pension funds were never placed in any other investment vehicle. (Trustee's Exhibit 2).

### c. The statute

Third, the funds are not exempt under §222.21(2) based on the precise language of the statute. In reaching this conclusion, the Court is guided by the decision in In re Swetic, 2013 WL 988160 (Bankr. M.D. Fla.). In that case, the issue was whether Florida law exempts unemployment compensation after it has already been paid to the recipient. In re Swetic, 2013 WL 988160, at 1.

The Court first noted that "there is no uniform answer regarding the treatment of monies received from an exempt source." Id. Instead, the language of the applicable statute must be evaluated in each case to determine whether a particular payment is exempt. In Swetic, the Court ultimately concluded that unemployment benefits lose their exempt status once they are received by a debtor, because the term "benefits due" in §443.051 of the Florida Statutes refers to "something owing" rather than

"something paid." Id. at 3(citing Broward v. Jacksonville Medical Center, 690 So.2d 589, 591 (Fla. 1997)).

In this case, the applicable statute is §222.21(2) of the Florida Statutes.

Section 222.21(2) provides an exemption for "money or other assets <u>payable to</u> an owner, a participant, or a beneficiary" from an account that is maintained in accordance with certain requirements of the Internal Revenue Code. Fla. Stat. §222.21(2)(Emphasis supplied).

The subsection contrasts with subsection (1) of the same statute, which refers to money "received by" a debtor as a "pensioner of the United States," and exempts the pension money if the debtor shows that it is necessary to his maintenance and support. Fla. Stat. §222.21(1).

In other words, §222.21 expressly distinguishes between funds that have been "received by" a United States pensioner in §222.21(1), and funds that are "payable to" the beneficiary of a tax-qualified plan in §222.21(2). Similar to the statute in Swetic, therefore, it appears that the exemption under §222.21(2) is provided only to those funds that are payable or owing to the beneficiary of such a plan, but not to funds that have already been distributed to or received by the beneficiary. See also In re Maxwell, 2009 WL 3381185, at 1 (Bankr. M.D. Fla.), in which the Court found that funds from the debtors' 401(k) account lost their exempt status when they were transferred into the debtors' money market account.

### d. No claim of exemption

Fourth, Mr. Jones never claimed an exemption for the withdrawn pension funds pursuant to §222.21(2) of the Florida Statutes.

On their bankruptcy schedules, the Debtors claimed the petition-date balance in Mr. Jones' checking account as exempt only pursuant to the <u>personal property</u> exemptions provided by Fla. Stat.

9

§222.25(4) and the Florida constitution. The Debtors were aware of the exemption for tax-qualified pensions, because they claimed the exemption for Mrs. Jones' separate 401(k) plan. Despite filing an amended SOFA, however, the Debtors never claimed an exemption for any of Mr. Jones' pension funds pursuant to §222.21(2) of the Florida Statutes. See In re McMillan, 2015 WL 2147044, at 2 (Bankr. M.D. Fla.)(The proceeds of an exempt IRA were not exempt, where the debtor did not claim the proceeds as exempt on his bankruptcy schedules.).

Under these circumstances, the property transferred by Mr. Jones was not an asset that was exempt from the claims of his creditors. He voluntarily withdrew the funds from his pension plan, the funds were never placed in a designated account, §222.21(2) of the Florida Statutes did not provide an exemption for Mr. Jones' pension funds after they were paid to him and deposited into his checking account, and Mr. Jones did not claim an exemption for his checking account under that statute. Consequently, Mr. Jones cannot claim that the proceeds of his liquidated pension account were exempt from his Chapter 7 estate.

**B. Section 727(a)(4)**

In Count I of the Complaint, the Trustee alleges that the Debtors' discharge should be denied pursuant to §727(a)(4)(A) of the Bankruptcy Code. "Under §727(a)(4)(A), discharge should be denied if 'the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account.'" In re Williamson, 2013 WL 441418, at 4 (Bankr. S.D. Ga.). The knowing failure to disclose information on a debtor's bankruptcy schedules constitutes a false oath for purposes of §727(a)(4). In re Weisenfeld, 2011 WL 1048563, at 6 (Bankr. S.D. Fla.).

*The transactions at issue in this case were not disclosed on the Debtors' schedules.*

10

Item 1 on the SOFA, for example, requires debtors to disclose their income within the two years preceding the bankruptcy petition. In response to item 1, the Debtors disclosed Mrs. Jones' income from her employment, and Mr. Jones' income from his social security and VA benefits. The Debtors did not disclose the income that resulted from the liquidation of Mr. Jones' pension fund, however, even though it was included as taxable income in the amount of $36,439.00 on the Debtors' 2014 income tax return. In re Dereve, 381 B.R. 309, 327-28 (Bankr. N.D. Fla. 2007). The 2014 tax return was a joint return filed on behalf of both Debtors, and the pension income represents the largest part of the Debtors' income for that year. (Debtors' Exhibit 2).

Additionally, item 11 on the SOFA requires debtors to disclose all financial accounts that were closed within the year preceding the bankruptcy petition, and the instructions for item 11 specifically refer to pension funds. In response to item 11, the Debtors checked "none," and therefore did not disclose the liquidation of Mr. Jones' pension fund in December of 2014.

Finally, the Debtors did not disclose (1) the payment to Aaron's Furniture in response to item 3 on the SOFA, which requires debtors to disclose aggregate payments in excess of $600.00 to creditors, or (2) Mrs. Jones' gifts to various family members in response to item 7, which requires debtors to disclose aggregate gifts of $200.00 or more to individual family members. The undisclosed gifts from Mrs. Jones, for example, include the sum of $200.00 given to each of six grandchildren, for a total of $1,200.00, the sum of $200.00 given to her son, and the sum of $300.00 given to the church pastor. (Debtors' Exhibit 3). According to Mrs. Jones, the gifts were made from the $5,000.00 in cash that she received from Mr. Jones on December 20, 2014.

As a result of the nondisclosures, the Debtors' SOFA did not reveal an accurate picture of the Debtors' financial affairs within the two months preceding the filing of their bankruptcy petition.

> It is well settled that a false oath or claim that causes a debtor's financial status to be misrepresented may be material. *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000)[discharge denied because debtor provided false or misleading information about his financial affairs]; *Haught*, 242 B.R. at 526[information needed to determine financial condition is material]; *Wells*, 243 B.R. at 63[false statement or omission is material if it "adversely affects the trustee's or creditor's ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing or financial condition"]; *Hoblitzell*, 223 B.R. at 215-16[disclosure is material "if it aids in understanding the debtor's financial affairs and transactions"].

In re Leffingwell, 279 B.R. 328, 349 (Bankr. M.D. Fla. 2002). See also In re Webb, 2014 WL 6924250, at 9 (Bankr. E.D. Tex.)(Complete financial disclosure is a condition precedent to the privilege of a bankruptcy discharge.).

Further, the Debtors were obligated to disclose the assets and transactions, despite their claim that the pension proceeds were exempt. In re Mitchell, 496 B.R. 625, 640 (Bankr. N.D. Fla. 2013)(Omissions are material, even if the debtor can claim the asset as exempt.); In re Barbee, 479 B.R. 193, 202 (Bankr. S.D. Ga. 2012)("Even if debtor can exempt all omitted items if he had duly listed them, the omission is material because a debtor is not automatically entitled to any particular exemption and the omission negates the creditors' right to object to claimed exemptions."). "It is well settled in this circuit that it is not for a debtor to decide what does or does not have value; the debtor must list all assets, leaving it to the creditors and trustees to decide for themselves what assets may benefit them." In re Mitchell, 496 B.R. at 638.

In this case, the Debtors' false statements on their SOFA concealed the fact that Mr. Jones had more than $28,000.00 in his checking account on December 19, 2014, and that he and Mrs. Jones made a number of transactions using a large portion of the funds in the two-month period between December 19, 2014, and February 25, 2015. The information was necessary to understand the Debtors' financial condition, and to understand their dealings with insiders and creditors.

12

*The schedules were signed by both Mr. Jones and Mrs. Jones, and misrepresented the Debtors'* financial affairs. The Debtors' nondisclosures constitute false oaths under §727(a)(4) of the Bankruptcy Code.

**C. Intent**

The Court has found that Mr. Jones transferred non-exempt property within a year before his bankruptcy petition, and that Mr. Jones and Mrs. Jones made false oaths on their bankruptcy papers.

*If a debtor makes a transfer with the intent to hinder, delay, or defraud a creditor, his discharge may be denied pursuant to §727(a)(2)(A) of the Bankruptcy Code. Additionally, if a debtor knowingly and fraudulently makes a false oath on his bankruptcy schedules, his discharge may be denied pursuant to §727(a)(4)(A) of the Bankruptcy Code. In either case, the debtor's fraudulent intent may be established by circumstantial evidence or a pattern of conduct.* In re Williamson, 2013 WL 441418, at 3, 5; In re Dereve, 381 B.R. 309, 326 (Bankr. N.D. Fla. 2007).

A number of circumstances in this case show that the Debtors intended to hinder, delay, or defraud their creditors by disposing of the proceeds of the pension fund and misrepresenting the transactions on their bankruptcy schedules. The circumstances that evidence the Debtors' intent include the following:

1. The current Chapter 7 case is Mr. Jones' fifth bankruptcy case. In two prior cases, a Chapter 13 case and a Chapter 7 case, Mr. Jones was represented by an attorney. (Case No. 3:99-bk-8163-GLP and Case No. 3:02-bk-3773-GLP).

2. Mr. Jones liquidated his pension account four days after his home was sold at a foreclosure sale. The foreclosure sale was conducted on December 15, 2014, and the liquidation of the pension

13

account occurred on December 19, 2014. The mortgage holders are listed as deficiency creditors on the Debtors' schedules.

3. Mr. Jones did not provide any reason or explanation for liquidating the pension account. At trial, he testified only that he "did not know" why he cashed in his retirement funds on December 19, 2014.

4. Mr. Jones withdrew the sum of $9,365.00 in cash on December 20, 2014, one day after liquidating the pension and depositing the proceeds into his checking account. In other words, he made a cash withdrawal of approximately one-third of the pension proceeds immediately after depositing the funds into his bank account.

5. Of the total $9,365.00 cash withdrawal, Mr. Jones gave the cash sum of $5,000.00 to his wife, who testified that she spent all of the money. According to her written itemization, the cash was primarily used for gifts to family members. (Trustee's Exhibit 5).

6. Mr. Jones otherwise used the pension proceeds to make transfers that were unusual or irregular in relation to his prior financial activity. On December 21, 2014, for example, Mr. Jones made a cash contribution to his church in the amount of $4,065. The amount of the contribution was notably large in relation to his prior contributions, which had ranged from $4.00 to $125.00 in the six months before December 21, 2014.

7. Mr. Jones has not provided explanations for many of the withdrawals from his bank accounts between December 19, 2014, and February 25, 2015, even in response to the Trustee's examination of his financial affairs.

8. On their bankruptcy schedules, the Debtors did not disclose the liquidation of the pension fund, the income received from the fund, the payment to Aaron's Furniture, or the gifts to family members that had occurred in the two months prior to the petition.

9. The Debtors did not disclose the liquidation of the pension account or the receipt of the account proceeds at the §341 meeting of creditors in the bankruptcy case.

Based on these circumstances, the Court concludes that Mr. Jones had prior knowledge of the bankruptcy process, that the Debtors were aware of the claims of the mortgage creditors who had foreclosed on their home, that Mr. Jones liquidated his pension fund in an effort to remove it from the reach from his creditors, and that the Debtors thereafter attempted to spend the pension proceeds or otherwise conceal them from their bankruptcy estate.

For these reasons, the Court concludes that the Debtors transferred property and made false oaths in their bankruptcy case with the intent to hinder, delay, or defraud their creditors within the meaning of §727(a)(2)(A) or §727(a)(4) of the Bankruptcy Code.

**D. Section 727(a)(5)**

In Count II of the Complaint, the Trustee alleges that the Debtors' discharge should be denied pursuant to §727(a)(5) of the Bankruptcy Code.

For a debtor's discharge to be denied under §727(a)(5), the plaintiff must show that the debtor failed to explain satisfactorily a loss of assets or a deficiency of assets to meet his or her liabilities. The determination of whether an explanation is satisfactory is left to the discretion of the Court, which may consider all relevant circumstances. In re Kane, 470 B.R. 902, 934 (Bankr. S.D. Fla. 2012).

In this case, Mr. Jones experienced a loss of assets, and has failed to provide a satisfactory explanation for the loss.

15

As discussed above, Mr. Jones deposited the sum of $28,151.43 into his checking account on December 19, 2014. During the next two months, Mr. Jones' social security payments and VA payments were also deposited into his bank accounts. (Trustee's Exhibit 2). Of the total deposits, the sum of $4,146.15 remained in Mr. Jones' bank accounts when he filed his bankruptcy petition two months later, on February 25, 2015.

Mr. Jones testified that he gave a portion of the money in his bank accounts to his wife and to his church, and that he used additional amounts to purchase a vehicle, to pay Aaron's Furniture, and to pay his bankruptcy attorney's fees.

At trial, however, Mr. Jones simply testified that he "did not know" the purpose of a number of other significant withdrawals from the accounts. The additional transactions include a withdrawal in the amount of $1,819.00 on December 23, 2014, a withdrawal in the amount of $400.00 on December 29, 2014, two withdrawals totaling $848.00 on December 31, 2014, and a withdrawal in the amount of $450.00 on February 5, 2015. Standing alone, these transactions represent total unexplained withdrawals of $3,517.00 within a period of five weeks.

Mr. Jones' bank accounts were significantly diminished in the weeks before his bankruptcy petition was filed. After considering Mr. Jones' testimony, the Court cannot determine what happened to the funds in the accounts, or whether any funds are missing. See In re Brown, 531 B.R. 236, 265 (Bankr. W.D. Mo. 2015).

The Trustee's Complaint had been pending for approximately five months before trial, and Mr. Jones was aware that he would be called upon to account for his disposition of the pension proceeds. Despite having notice of the Trustee's claims, Mr. Jones was unable to provide even vague or

speculative explanations of many transactions that took place on the eve of his bankruptcy. See In re Stamat, 395 B.R. 59, 77 (Bankr. N.D. Ill. 2008).

Under the circumstances of this case, the Court finds that Mr. Jones failed to explain satisfactorily a loss of assets within the meaning of §727(a)(5) of the Bankruptcy Code.

## Conclusion

Mr. Jones liquidated his pension fund on December 19, 2014, and deposited the sum of $28,151.43 into his checking account. In the two months between the deposit and the filing of his bankruptcy petition on February 25, 2015, Mr. Jones (1) gave $5,000.00 in cash to his wife, (2) gave $4,065.00 in cash to his church, (3) spent $3,870.00 to purchase a vehicle, (4) spent $1,010.00 to pay off a debt to Aaron's Furniture, and (5) spent $3,025.00 to pay his bankruptcy attorney's fees. Mr. Jones did not explain a number of other expenditures, and did not fully disclose the transactions on his bankruptcy schedules.

Based on the circumstances and his course of conduct, the Court finds that Mr. Jones transferred property within one year before his bankruptcy petition with the intent to hinder, delay, or defraud his creditors, that Mr. Jones knowingly made a false oath on his bankruptcy schedules, and that Mr. Jones failed to satisfactorily explain a loss of assets. Consequently, his discharge should be denied pursuant to §727(a)(2)(A), §727(a)(4), and §727(a)(5) of the Bankruptcy Code.

Additionally, the discharge of Mrs. Jones should be denied pursuant to §727(a)(4) of the Bankruptcy Code, because she knowingly made a false oath on the bankruptcy schedules. Specifically, the Statement of Financial Affairs signed by Mrs. Jones did not disclose the liquidation of the pension fund, the income received as a result of the fund, or the gifts that she made from the proceeds of the

fund, even though Mrs. Jones was aware that the transactions had occurred within two months before the bankruptcy petition was filed.

Accordingly:

**IT IS ORDERED** that:

1. The discharge of the Debtor, Jeffrey Leonard Jones, is denied pursuant to §727(a)(2)(A), §727(a)(4)(A), and §727(a)(5) of the Bankruptcy Code.

2. The discharge of the Debtor, Darnella Cole Jones, is denied pursuant to §727(a)(4)(A) of the Bankruptcy Code.

3. A separate Final Judgment in favor of the Plaintiff, Aaron R. Cohen, as Chapter 7 Trustee, and against the Debtors, Jeffrey Leonard Jones and Darnella Cole Jones, will be entered consistent with these Findings of Fact and Conclusions of Law.

**DATED** this __8__ day of __February__, 2016.

**BY THE COURT**

_____
PAUL M. GLENN
United States Bankruptcy Judge